Ex parte YAHOLA.

YAHOLA v. BERRYHILL et al.

No. 27212. May 18, 1937.

Rehearing Denied July 13, 1937.

Supplemental Opinion Sept. 21, 1937.

Application for Leave to File Second Petition for Rehearing Denied Oct. 12, 1937.

Philip Jackson and Pitchford & Pitchford, for plaintiff in error.

Merrick A. Whipple, for defendants in error.

PHELPS, J. This was a habeas corpus action by the father of a child five or six years of age, against the child's maternal grandparents, for the custody of the child. After several hearings and the entering of successive orders in the cause, the trial court granted the exclusive custody to the grandparents, and the father appeals.

The evidence reveals that the father, whom we shall hereinafter call plaintiff, was married at the age of 19 and that shortly thereafter his mother had the marriage annulled. Prior to the annulment, however, his wife became enceinte, and about four months after the annulment gave birth to the child involved herein. The child's mother (plaintiff's ex-wife) was at that time living with her parents, the child's maternal grandparents, who are the defendants. Plaintiff did not appear concerned or in any manner interested in the birth of his daughter, never went about the child or its mother, and its mother died, probably from the effects of said childbirth, about a month after the birth. The

maternal grandparents, defendants, kept the child and cared for her, and during the five years of her life preceding the filing of this action the plaintiff manifested little, if any, interest in her.

Shortly before the filing of this action the plaintiff was informed by the Bureau of Indian Affairs that the Bureau would withhold further payment of funds to the plaintiff, who is an Indian, until and unless he should pay more attention to his baby. Plaintiff testified that the threat of the Bureau to withhold payment of his allowance was the cause of his instituting this action to obtain custody of the child. In this connection the remarks of the trial judge, to the following effect, are clearly justified by the record:

"I don't think that Locust Yahola has ever manifested very much interest in this baby. I am considering not only the testimony that you have offered today, but also the testimony that was offered originally in the hearing. Locust paid no attention to this baby at all until the Department of the Interior advised him if he did not do it, they were going to cease to pay him anything out of the funds he had on deposit in the Interior Department, from which he receives this one hundred and fifty dollars a month which he has testified about before."

We shall not set forth the evidence in great detail. The plaintiff has an income sufficient to maintain the child, if he had the real inclination to do so. He lives with his mother, and it was remarked by the trial judge, with fairly good reason, that this action was really between the two grandmothers of the child. The plaintiff is not shown to have been lacking in moral character. On the other hand, the defendant grandmother is also financially able to care for the child, and is not shown to have been an unfit person to have the child's custody.

The right of the father to the custody of his minor child, when its mother is dead, is well recognized. Usually, the fact of such close relationship is accorded almost exclusive importance in determining who shall have the custody of the child. The rule, however, is not without its exceptions. It is not an absolute right, but one which must at all times be qualified by considerations affecting the welfare of the child.

The conflict illustrated by the present case has, in one form or another, been before this court frequently. In some cases the father has prevailed and in other cases he has been denied the custody. Each case

depends upon its own facts and circumstances. Ordinarily, even though the financial interests of the child might be better served elsewhere, the custody is left with the father if he is able to reasonably care for the child, and if he shows himself to be a fit person to be entrusted with its custody.

But where his conduct has evidenced a state of indifference to the child, as opposed to the ability, good character, and love possessed and manifested by his opponents who have reared such child from babyhood, the court may be justified in finding that the best interests of the child would be more properly served by leaving it with the latter. We think that the instant case is of that character. Here the defendant maternal grandmother attended the birth of the baby in her own home, when no one knew where the plaintiff was. From earliest babyhood she reared the child as her own, and no doubt has such an affection for the baby as its own mother would have had. The years went on and the child reached the age of five or six years, and it was not until the plaintiff's own financial affairs were threatened that he manifested any interest whatsoever in the child. Can it be said that the rule applied in normal cases should obtain here? In the light of the history of the parties, it would appear very doubtful. And we make that statement, having fully in mind the fact, as evidenced by the record, that the defendant grandmother herself, in her zeal to retain custody of the child, has not always used good judgment in certain statements made to the child concerning the plaintiff and his mother.

In Bishop v. Benear, 132 Okla. 116, 270 P. 569, the action was habeas corpus by the father of minor children against their maternal grandparents, as here. The trial court evidently was of the impression in that case that by reason of our statutes (the same as section 1685, O. S. 1931), the father was entitled to the custody of the children unless he was an unfit person to rear them. This court reversed the judgment, pointing out that the best interests of the children themselves were paramount to the rights of the father. In Hamann v. Miesner, 148 Okla. 50, 297 P. 252, the action was likewise by the parent against the child's grandparents. The trial court left the custody of the child with the grandparents, just as in this case, and on appeal the judgment was affirmed. In so affirming the judgment, and in speaking of the presumption of law to the effect that the parent is the proper person to have the custody of the minor child, we said:

"However, this presumption of the law has exceptions. Where a father has abandoned his child to strangers or near relatives, as in this case to the grandparents, and left its care and custody exclusively to them for a long period of time, ties of affection and love have grown up between the infant child and its grandparents. He does not come with the same rights as the man who has kept in touch with his child and constantly visited it. In so far as the child is concerned in the case at bar, the father comes almost as a stranger to the child. If the ties of blood and parenthood were not strong enough to cause him to take an interest in this helpless infant, to assist in its care, it may not be strong enough for him to give it the proper care and training if it were committed to his custody."

The facts in the instant case are singularly akin to those in the case just quoted. The same result was reached in Morris v. Morris, 81 Okla. 222, 198 P. 70. The same was true in Richards v. Christy, 150 Okla. 221, 1 P. (2d) 168, and in Ex parte Lebsack, 168 Okla. 299, 32 P. (2d) 923, where a father brought an action against the maternal grandparents of his infant child whom the maternal grandparents had nurtured and cared for from its infancy. The conduct of the father in having virtually abandoned the mother and child while the mother was in her last illness was held to preclude the father from insisting upon custody as a matter of right. The following is from that decision:

"A number of witnesses testified to the good character and exemplary life of petitioner, and all these things were taken into consideration by the trial court.

"It may be conceded that the evidence shows petitioner to have a good character and standing among his neighbors.

"In commenting upon the actions and conduct of petitioner toward his wife and child, the trial court said: 'That being his sense of duty to his wife, what would he do with the child? .I don't think he could, possibly, think any more of the child at this time than he did of his wife when he married her. * * * If he would quit his wife in a condition like that, what would he do with the child if he got it back?'

"We bear in mind that petitioner is seeking merely to transfer the care and custody of the child from the maternal grandparents, who had nurtured and cared for it from its infancy, to the paternal grandparents.

"The trial court had all the parties before it, and had an opportunity to observe their conduct and demeanor, and now considering that the welfare of the child as well as the wishes of the parties is of importance, we are not willing to say that the judgment is contrary to the weight of the evidence or contrary to law."

It is evident to us that the instant case comes within the class of those of our decisions quoted above. And we cannot say that the trial court's finding that the best interests of the child demand that its custody be left with the defendants is against the weight of the evidence. Nor do we think that under the facts of this case there should be alternating custody, for the history of the case reveals that when plaintiff has temporary custody of the child he takes it to his mother's home where he lives, and this causes trouble between the two grandmothers. Personal altercations have occurred between them, and, as the trial judge remarked, instead of the child drawing the two families together, it seems to be widening the rift between them.

We will not go so far, however, as to affirm this judgment to the extent of denying the father the right to see and visit his child at the home of defendants. The courts should encourage the development of natural affection between parent and child. And when this cause is remanded to the trial court, it is directed that the trial court make some suitable provision for reasonable visitation of the father with the child.

The plaintiff further contends that the court erred in ordering him to pay to the respondents $20 per month for the support of the child. He denies that in a habeas corpus action between the father and the maternal grandparents the court has the power to require him to pay support money for the child. It appears to us that if he had the proper interests of the child at heart, he would be willing enough to pay the comparatively small sum of $20 a month for its support out of his ample funds in the hands of the Bureau of Indian Affairs, regardless of its custody.

Section 1693, O. S. 1931, cited by plaintiff, provides that a parent is not bound to compensate the other parent or a relative for the voluntary support of his child, without an agreement for compensation, nor to compensate a stranger for the support of a child who has abandoned the parent without cause. In our opinion, that section of the statute is not controlling here; if it were controlling in the instant case, it would likewise be controlling in a divorce case, and it requires no discussion to illustrate that said section is not binding on the court in a divorce case. The section is often held applicable to instances where the opposing parent or a relative or stranger has in the

past furnished voluntary support for the child, and then asks for reimbursement therefor. The question with which we are here dealing is whether the parent will be bound, not to compensate others for past support, but to furnish part of the money for the support, himself, in the future.

Habeas corpus is ordinarily considered a legal and not an equitable remedy. But the supervision of the courts over the custody and welfare of children is of itself equitable, and not strictly legal, in nature; and it is for this reason that where the custody of children is involved in habeas corpus proceedings the inquiry becomes of an equitable nature, and the rules and remedies associated with equity actions are applicable. Murphree v. Hanson, 197 Ala. 246, 72 So. 437; Jain v. Priest, 30 Idaho, 273, 164 P. 364; In re Sidle, 31 N. D. 405, 154 N. W. 277; Knapp v. Tolan, 26 N. D. 23, 142 N. W. 915, 49 L. R. A. (N. S.) 83; Ex parte Turner, 86 Ore. 590, 167 P. 1019, 169 P. 109.

Both by statute and the common law the father is charged with the support of his minor, unmarried, legitimate child. Such duty is unquestioned. All parties who could be interested or affected were properly before the court. Therefore the court had jurisdiction of the parties. It was within the power of the court to make such orders as would best insure the proper care of the child. The order of support, in our opinion, was a matter within the discretion of the court, and he was empowered to make such order of his own motion, regardless of whether the pleadings sought support money. It does not follow, from the fact that the father was denied custody, that he may not be required to provide support money. The custody was denied him by reason of his own indolence, indifference, and inattention to the child, and were we to hold that he could not be made to provide support money for the child, it would enable him to convert his own misconduct into a shield to avoid parental liability. As stated by Bishop in his work on Marriage, Divorce and Separation (vol. 2, sec. 1223), it is fundamental, equally in our law and in natural reason, that no one can cast off an obligation by refusing to keep it, or any duty by any evil doing.

We conclude that a habeas corpus proceeding involving the custody of an infant is not strictly a writ of liberty, but is in its nature an equitable proceeding for determining the care and custody of said infant, and a court having jurisdiction of the parties and the subject matter not only may determine the right to the custody, but may also adjudge financial responsibility for the support of the said child.

It will be noted, of course, that the trial court has continuing jurisdiction, and if a sufficient change in conditions in the future shall occur as to warrant a modification of the decree, it is within the power of the court to provide therefor.

The judgment is hereby modified to the extent that the father will be accorded the right of reasonable visitation of the child, upon terms to be determined and pronounced by the trial court, in further proceedings within a reasonable time after this judgment becomes final, and as thus modified, the judgment is affirmed.

OSBORN, C. J., and RILEY, BUSBY, CORN, GIBSON, and HURST, JJ., concur. WELCH, J., dissents. BAYLESS, V. C. J., absent.

### On Rehearing.
#### Supplemental Opinion.

PHELPS, J. Upon further consideration we are of the opinion that, due to the evident animosity existing between the child's maternal grandmother and the plaintiff, it would be better if the development of that acquaintance and affection which the father and child ought to have for each other be attempted in some other environment, free of all possible hostility.

It would not be good for the child herself, at her tender age, to be removed entirely from the custody and association of her grandmother, who has reared her from birth. Yet, with an eye to possible future hearings, the father should be given a fair opportunity to demonstrate whether he has the capacity and inclination to assume his proper status as a father in fact, with those attributes which the name implies.

Accordingly, we adhere to the mandate expressed in the above opinion, except that instead of the right of reasonable visitation being accorded the father as directed therein, he will be granted the custody of the child for such week-end periods during the school term and such periods during school vacations as may be determined suitable, and definitely and specifically prescribed by the trial court, within a reasonable time after this judgment becomes final: provided, however, that no such order of modification will be made by the trial court

until the plaintiff shall have made complete payment of the support money installments due to the date of such order.

OSBORN, C. J., BAYLESS, V. C. J., and CORN, GIBSON, HURST, and DAVISON, JJ., concur. RILEY, J., absent. WELCH, J., not participating.