Thomas R. DAVIS, Plaintiff in Error,

v.

Ralph NEELY and Virginia G. Neely, Defendants in Error.

Nos. 39402, 39403.

Supreme Court of Oklahoma.

July 16, 1963.

Rehearing Denied Dec. 17, 1963.

Luttrell & Luttrell, Norman, Robert T. Rice, Edmond, for plaintiff in error.

Looney, Watts, Looney, Nichols & Johnson, Ned Looney, Anna B. Otter, Oklahoma City, for defendants in error.

SHIRK, Special Justice.

Two cases concerning the proceedings for the adoption of two minor children without the consent of the natural father are pending before this Court. Cause No. 39,402, relates to the judgment of the Children's Court which determined the children eligible for adoption without the consent of their natural father and Cause No. 39,403, concerns the Decree of Adoption. These two cases have been consolidated by this Court because of the reasons hereinafter set forth.

The natural parents of the two minor children are Thomas R. Davis and Virginia G. Neely. They were married in 1945 and were divorced in the Superior Court of Marin County, California, in 1950. Care, custody and control of the minors was granted to the mother and the father was given the right to visit the children under reasonable circumstances.

The mother subsequently married Ralph Neely, hereinafter referred to as the petitioner, and established her home in Oklahoma. Since the date of the marriage the two minors have lived with their mother and her husband in the Neely home in Oklahoma County.

Although at no time since the divorce has the natural father contributed to the support and maintenance of the children, he has maintained an irregular but not indifferent communication with the children by letters and by gifts as Christmas and on birthdays. In 1954 he came to Oklahoma for the purpose of visiting the children but was unable to do so. In 1955 he instituted a habeas corpus proceeding in the District Court of Oklahoma County in order to require Mr. and Mrs. Neely to allow him to see his children. The application for a writ of habeas corpus was denied on February 19, 1955. Although

no formal journal entry was entered by the Judge who heard the case, his remarks from the bench at the conclusion of the hearing denying the writ were transcribed and are a part of the record in this cause. The journal entry denying writ of habeas corpus was entered sometime later by the successor to the Judge.

In 1957 the natural father filed a motion in the original divorce action in the Superior Court of Marin County, California, for modification of the custody rights. An order was entered on May 8, 1958, awarding custody to the father for the month of July each year beginning in 1958. An appeal from this modification was taken by Mrs. Neely to the District Court of Appeal, First District, and the order was affirmed on January 11, 1960. See Davis v. Davis, 177 Cal.App.2d 75, 1 Cal.Rptr. 923.

While the appeal from the modification order was pending, the petitioner and Mrs. Neely filed on October 15, 1959, in the Children's Court of Oklahoma County, Oklahoma, petition for the adoption of the two children. The natural mother gave her consent. At the same time the petitioner filed an application to declare the minors eligible for adoption without consent of the father. Notice required by the Uniform Adoption Act, (Title 10 O.S.1961, Chapter 2 A) was given to the natural father.

Hearing on the merits commenced on April 15, 1960. Considerable oral testimony was adduced, and copies of a number of letters the natural father had written from time to time to his children and other correspondence were offered in evidence. At the conclusion of the hearing the matter was taken under advisement by the trial court and requested findings of fact and conclusions of law were submitted.

On May 27, 1960, the Children's Court entered its findings of fact and conclusions of law and entered its order declaring the minors eligible for adoption without the consent of the natural father. On the same date there was filed the consent of adoption

by both minors and the decree of adoption was entered. The natural father filed motions for new trials from the order relating to the consent issue and also from the decree of adoption. Both of these motions were overruled and the natural father perfected the two appeals.

One of the issues involved in both cases is that of appellate procedure. The natural father contends that the order determining the children eligible for adoption without his consent was a final order, and being a final order the same could be appealed; that he gave the statutory notice of appeal and that the same was pending when the trial court proceeded to hear and determine the petition of adoption; and that the trial court was without jurisdiction to proceed to hear and determine the petition for adoption until the appeal from the order determining the children eligible for adoption without the consent, had been finally determined. In other words, the natural father proposes that there are two separate and distinct phases in an adoption proceeding where the issue of consent is involved, i. e., the issue of consent and whether a decree of adoption should be decreed; that both are final orders and as such, both are appealable; that if an appeal is lodged from an order determining a child is eligible for adoption without the consent of its natural parent, the court does not have jurisdiction to proceed with the adoption phase until the appeal from the order determining that consent is not necessary, is finally determined.

Although Title 10 O.S.1961 § 60.8, provides that before the court hears a petition for adoption without the consent of a parent an order must be entered determining that consent is not necessary, we do not believe that such order standing alone prior to the completion of the adoption proceedings, comes within the purview of Title 10 O.S.1961 § 60.19, which provides:

"An appeal may be taken from any final order, judgment or decree rendered hereunder to the Supreme Court

by any person aggrieved thereby, in the manner provided for appeals from said court in civil matters."

Whether a natural parent executes a written consent of adoption or whether application is made for adoption without the consent of a parent, both are part and parcel of an adoption proceeding. If the trial court determines that consent of a parent is not necessary and a decree of adoption is entered, the parent may then appeal and have considered on appeal the issue concerning consent and the issue concerning the decree of adoption. If an order determining a child is eligible for adoption without consent of a parent could be appealed the proceedings for the adoption would have to be held in abeyance until the question of consent was determined by this Court on appeal. This would delay the final adoption proceedings and would not be in harmony with Lewis v. Lewis, Okl., 380 P.2d 697, wherein we said:

> "* * * it seems reasonable that the Legislature in providing for appeals direct to this court was not unmindful of the desirability of a speedy and final determination of the adoption proceeding in the interest of the children involved."

We conclude that where an application is made for adoption without the consent of a parent, if the trial court determines the child to be eligible for adoption without the consent of the parent, the order making such determination is not an appealable order as the aggrieved person may present such issue on appeal if and when a decree of adoption is entered and a proper appeal is perfected from the decree of adoption. However, if the trial court determines that a child is not eligible for adoption without the consent of a parent, the order making such determination is appealable as the aggrieved party could not proceed further in the adoption proceeding.

We therefore hold that the Children's Court did not err in proceeding with the adoption, even though the natural father had saved his exceptions and given notice of appeal from the order determining the children eligible for adoption without his consent. This is grounded on the conclusion that an appeal does not lie from an order of the Children's Court determining a child eligible for adoption without the consent of its natural parent.

However, since this is a question of first impression before this Court and the statutory provisions are not too definite on this issue and the natural father properly perfected an appeal from the Decree of Adoption, which would include the issue as to consent, we can only conclude that the issue as to consent is properly before this Court for determination. Therefore, Cause No. 39,402, which relates to the consent issue is consolidated with Cause No. 39,403, which relates to the Decree of Adoption.

In determining that the children were eligible for adoption without consent of the natural father, the trial court found, inter alia, that the habeas corpus proceeding in the District Court of Oklahoma County, Oklahoma, divested the natural father of all remaining rights he had of the custody and visitation of the children; and further found that the Modification of the Divorce Decree entered by the California Court, after the habeas corpus proceeding in the Oklahoma District Court, was null and void and beyond the jurisdiction of the California Court in the absence of domicile or presence of the minor children. However, it is not necessary to consider the correctness of the above findings and conclusions of law when we consider the other findings and conclusions of law in the trial court's order in connection with the statutory power and authority of the Children's Court and our adoption laws.

■ Under the doctrine of parens patriae, Oklahoma has the inherent power to enact statutes, be the same adoption or otherwise, for the inherent good of children domiciled within its borders. We defined

this doctrine in McIntosh v. Dill, 86 Okl. 1, 205 P. 917:

"The doctrine of parens patriae to which we hereinafter make reference and application may be defined as the inherent power and authority of a Legislature of a state to provide protection of the person and property of persons non sui juris, such as minors, insane, and incompetent persons."

Ordinarily an adoption court devotes its entire attention as to whether the adoptive home will serve the best interests of the child and whether the child is properly placed in the adoptive home. Under this theory controversies respecting the termination of parental rights should be settled in other proceedings before adoption proceedings are brought as the issues to be tried in controversy over the termination of parental rights, i. e., the degree of unifitness of a parent, are quite different than the inquiry properly before an adoption court. See Commissioners Notes U.L.A., Uniform Adoption Act, Vol. 9, page 31.

Prior to the enactment of "The Children's Court Act" (Title 20 O.S.1957 Supp. §§ 861–907) Oklahoma followed the theory above set forth. However, by enactment of "The Children's Court Act" in 1957, the Legislature specifically granted the Children's Court not only the power and authority to hear and determine adoption proceedings but also vested in said court the power and authority to determine custody of children.

Title 20 O.S.1961 § 863, prescribed the jurisdiction of the Children's Court, the adopting court in the instant action, to-wit:

" * * * the court shall have original jurisdiction in proceedings:

* * * * * *

"4. To determine custody of the person only of any child living within the county.

"5. For the adoption of a minor."

The Children's Court Order "Determining Children to be Eligible for Adoption Without Consent of Natural Father", contained, inter alia, the following:

"That the Court has primary and original jurisdiction, within the purview of Title 20 OSA § 863, to determine for itself all questions of custody of minor children living within this State and County; that said minor children herein, Paul Delmar Davis and Gaylord Davis, have been domiciled in this County for approximately ten years; that the record evidence before this Court conclusively shows the natural father, Respondent, Thomas R. Davis, grossly neglected these minor children from a period of the summer of 1950 to this date by reason of absolute admitted failure to support them, by failure to visit them from 1950 to 1955 when he was divested of any further rights of visitation, since he had become a stranger to them; and the evidence shows from expert testimony that it would be to the best interests and welfare of said minor children, physically, mentally and spiritually, to remain an integral part of the household of Applicants Ralph Neely and Virginia Gaylord Neely, and would be a physical, mental and spiritual detriment to them to be ordered to divide their time and allegiance to two homes, in one of which all of the occupants are strangers to them."

* * * * * *

"That by the further reason of the record evidence which this Court has original jurisdiction to consider, concerning right of custody of these minor children domiciled within its jurisdiction, it is to the best interests and welfare of said minor children that the natural father Respondent, Thomas R. Davis, be divested of any rights of custody or visitation which might remain to him under the provisions of the California Divorce Court; and for that further reason these minor children are eligible for adoption by Applicant, Ralph Neely, in these proceedings without the consent of the natural father, Respondent herein, Thomas R. Davis.

"IT IS THEREFORE ORDERED AND ADJUDGED BY THIS COURT, that children, Paul Delmar Davis and Gaylord Davis, are eligible for adoption in these proceedings without the consent of the natural father, Thomas R. Davis."

It is to be noted that the Children's Court not only found that the natural father grossly neglected the minor children but said court specifically divested the natural father of any rights of custody or visitation which might remain to him.

We fail to see any distinction between the exercise of such power by the Children's Court in instances where the original decree of divorce, albeit one that granted visitation rights, was one entered by a sister state or one entered originally by an Oklahoma Court. The doctrine of parens patriae has long been recognized in custody cases, 4 A.L.R.2d 41; and in view of the jurisdiction conferred by the Children's Court Act, it may be recognized with equal validity in adoption matters. Typical cases are collected at 47 A.L.R.2d at page 848.

That such matters become a question of fact to be determined by the adoption court, when such jurisdiction has been so conferred as has here under our Children's Court Act, is recognized by the Supreme Court of Arizona in Shumway v. Farley, 68 Ariz. 159, 203 P.2d 507:

"We hold that notwithstanding a divorce decree may award custody of a child to one parent, the other parent can be found to have wilfully deserted and neglected to provide proper care and maintenance for the child within the meaning of our adoption statute. The question of whether there has been such desertion and neglect of the child sought to be adopted is one of fact for the determination of the trial court."

We are not unmindful that the Children's Court Act was approved on May 17, 1957, and that the Uniform Adoption Act was approved ten days later. We discussed the inter-relationship of these two Acts in Lewis v. Lewis, supra, and we see nothing in the circumstance that the Uniform Adoption Act was adopted more recently which erodes any of the jurisdiction of the Children's Court.

Title 10 O.S.1961 § 60.6, provides:

"A legitimate child cannot be adopted without the consent of its parents, if living, * * * except that consent is not necessary from a father * * * who has been judicially deprived of the custody of the child by any court of competent jurisdiction on account of cruelty or neglect."

Title 10 O.S.1961 § 60.7, provides:

"Where a parent has been * * * judicially deprived of the custody of a child on account of such cruelty or extreme cruelty or gross neglect of duty, or where a parent has wilfully failed, refused or neglected to contribute to the support of his child, as provided in the decree of divorce, for a period of one (1) year next preceding the filing of a petition for adoption of such child, it shall not be necessary to procure the consent of such parent to the adoption of said child."

In our judgment it is not necessary to have a court of competent jurisdiction in a separate proceeding judicially deprive a parent of custody on account of extreme cruelty or gross neglect of duty or have a court judicially determine that the father has wilfully failed, refused or neglected to contribute to the support of his child as provided in the decree of divorce for the statutory period before a petition for adoption is filed. However, before entering a decree of adoption, it is necessary for the court to hear and determine why the consent of the natural parent is not necessary and in our opinion such may be determined by the adoption court which has the authority to determine the custody of any child living within the county and the power to issue a decree of adoption.

With respect to notice to the natural parent whose consent is believed to be unnec-

essary, Section 60.8 of the foregoing Title provides:

"Said application shall be set for hearing on a day certain and notice of such application shall be given the parent whose consent is alleged to be unnecessary. The notice of the application shall contain the name of the child, or children, for whom application for adoption is made and the date said application is set for hearing and the reason that said child is eligible for adoption without the consent of such parent, and shall be served upon such parent as summons in civil cases at least ten (10) days prior to the hearing. Provided, that if such parent resides outside the county, such notice shall be given by registered mail at least fifteen (15) days prior to the hearing."

In this cause notice was given the natural father by registered mail by the Clerk of the Children's Court on October 15th, 1959. The notice assigned as the reason consent to be unnecessary was that the natural mother had procured a divorce on the grounds of extreme cruelty. Thereafter, and after the natural father had entered his appearance and requested a continuance, the petitioner amended the adoption application by including as an additional ground the determination made by the District Court of Oklahoma County in the habeas corpus proceedings. The natural father responded to the amended application by a Motion to Dismiss. We are not unmindful that to this point in the proceedings all of the parties were looking solely to the effect of the divorce decree of the California Court and the habeas corpus judgment of the Oklahoma Court. However, at the opening of the proceedings, and at least two times during the hearings, the trial court indicated that its power to determine custody of minors was at issue and should be considered, and that the Children's Court would have the authority to determine that the children were eligible for adoption without the consent of the natural father "regardless of whether or not Mr. Davis has

been heretofore judicially deprived of his rights."

■ The Children's Court not only found the natural father guilty of gross neglect but also judicially deprived him of all custody and visitation rights. This it had the statutory authority to do, and having exercised such authority it then had the power to determine the children eligible for adoption without his consent.

After the Children's Court issued its order determining that consent was not necessary, it proceeded with the hearing on the Petition for Adoption. In considering the Petition for Adoption, the Children's Court ruled that the natural father could not participate in the proceedings and he contends this constitutes reversible error.

■ Title 10 O.S.1961 § 60.16, prescribes the effect of a final decree of adoption upon the relationship of a natural parent and an adopted child. Until there is a final decree of adoption the relationship of parent and child still exists although the parent may not have the right of custody or the right of visitation and his consent to adoption might not be necessary. Although a natural parent's consent may not be necessary and a decree of adoption may be entered without his consent, he may still contest the propriety of the adoption and present to the adoption court evidence that may be relevant to the court's primary inquiry whether the adoption will promote the best interests of the child. We therefore hold that where an adoption court determines that consent of a natural parent is not necessary in an adoption proceeding, such parent may yet participate in the adoption proceedings.

Being entitled to participate in such proceedings, he can challenge the procedure of the adoption and the jurisdiction of the adoption court as well as the fitness of the petitioners. In the instant action we have already determined that the procedure followed by the Children's Court was correct and that it had jurisdiction to complete the adoption even though the natural father attempted to appeal from the order determining the children were eligible for adop-

tion without his consent. Therefore, had the father been permitted to participate in the adoption proceedings, the only matter remaining for the adoption court to determine and for the father to challenge was whether the children should be adopted. The primary inquiry in making this determination was whether the adoption would promote the best interests of the children.

Therefore, denying the father the right to participate had the effect of denying the father the right to submit evidence why the adoption should not be completed. However, when he was denied the right to participate the father made no offer of proof why the adoption would not promote the best interest of the children; why the adoption should not be completed; or in what manner he would participate if given the right to do so.

In Taylor v. Davis, 199 Okl. 260, 185 P.2d 444, we held that as a general rule, the exclusion of evidence in the trial court will not be reviewed on appeal unless a proper offer of the excluded evidence is made and included in the record. Title 12 O.S.1961 § 78, provides that the court, in every stage of the action, must disregard any error or defect in the proceedings which does not affect the substantial rights of the adverse party and no judgment shall be reversed or affected by reason of such error or defect.

Although the father was entitled to participate in the adoption proceedings, he failed to show in what manner he would have participated if permitted to do so and we can not find where the trial court's ruling denying him the right to participate affected the substantial rights of the father. We therefore conclude, that although it was error for the trial court to deny the father the right to participate in the adoption proceedings, such denial in the instant case does not constitute reversible error.

We have examined in detail the evidence upon which the trial court's determination as to its order determining the children were eligible for adoption without the consent of the natural father and its Decree of Adoption. Three medical doctors testified. One unequivocally recommended the adoption and the other two discussed what each believed to be the best interests of the minors. Both natural parents testified in length as did the Petitioner, Neely. This Court could witness their candor and demeanor and the trial court's findings are not against the clear weight of the evidence.

The judgment of the trial court determining the children eligible for adoption without the consent of the natural father and the Decree of Adoption are affirmed.

WELCH, DAVISON, JOHNSON and IRWIN, JJ., concur.

JACKSON, J., concurs in result.

BLACKBIRD, C. J., HALLEY, V. C. J., and WILLIAMS, J., dissent.

BERRY, J., having certified his disqualification in this case, Honorable GEORGE H. SHIRK, Oklahoma City, was appointed Special Justice in his stead.

HALLEY, Vice Chief Justice (dissenting).

The majority opinion states that the Children's Court found the natural father guilty of gross neglect and, based thereon, judicially deprived him of all custody and visitation rights. Then the opinion says, "This it had the statutory authority to do, * * *." I believe this is wrong for two reasons. First, the Uniform Adoption Act does not provide for the adopting court to have the power as part of the adoption proceedings to make a determination judicially depriving a parent of custody of his child. 10 O.S.1961 §§ 60.6, 60.7, specifically provide that such judicial determination *must have been made prior to the commencement of adoption proceedings.* 10 O.S.1961 § 60.6, provides that consent to adoption is not necessary from a father "who *has been* judicially deprived of the custody of the child." And 10 O.S.1961 § 60.7, provides that where a parent *"has·*

*been*" judicially deprived of custody his consent is unnecessary. This is also the construction placed on the Uniform Adoption Act by the National Conference of Commissioners on Uniform State Laws as shown by the Commissioners' Note found in Uniform Laws Annotated, Volume 9, p. 30:

"It is the theory of this act that the adoption proceedings should be based on consent. Only then can the adoption court devote its entire attention to the inquiry whether the adoptive home will serve the best interests of the child and whether the child is properly placed in the adoptive home.

"Under this theory controversies respecting the termination of parental rights should be settled *in other proceedings* in a court with jurisdiction of the parties *before the adoption proceedings are brought.* Once the parental rights are terminated the adoption court in the adoption proceedings has no other function in this respect except to recognize that the parental rights *have been legally terminated* * * *.

"It has been suggested that a procedure should be provided in the adoption act to terminate parental rights where the consent cannot be obtained. Aside from the jurisdictional and procedural difficulties this would entail, it is subject to a basic policy objection. The issues to be tried in a controversy over the termination of parental rights, i. e., the degree of unfitness of a parent, are quite different than the inquiry properly before an adoption court. *The two should not be mixed.* The trial of controversial issues over parental rights should not cast an influence in the adoption proceedings where the sole inquiry should be the future best interests of the child.

"Consequently, the determination of the parental rights is left to be settled under the laws of the various states, and *until terminated*, by consent or by a court order in a court having jurisdiction of the parties under laws providing therefor, *there can be no adoption proceedings.*" (emphasis supplied.)

I believe that when our Legislature passed this Uniform Adoption Act they recognized and understood the policy considerations stated in the above Commissioners' Note. The reasoning is valid. The adoption court should not be required to make a judicial determination concerning the custody of a non-consenting parent. As I read our statutes the adoption court is not allowed to make that determination. Such judicial determination must have been made prior to the commencing of adoption proceedings. The adoption court will then decide whether there *has been* a judicial determination of custody rights.

The writers on the subject of our new adoption statutes apparently share my view. See Sater, Adoption of Children, 32 O.B.J. 2376; Adoption, 14 Okl.L.R. 353.

In the instant case, the latest judicial determination prior to the adoption proceedings concerning custody was that made by the California divorce court which granted Mr. Davis partial custody. If Mr. and Mrs. Neely thought there had been a change of conditions since the California determination, they could have tried the matter in the District Court of Oklahoma County which had continuing jurisdiction over the parties as a result of the habeas corpus proceedings begun in 1955. We said in Yahola v. Berryhill, 180 Okl. 637, 71 P. 2d 968, (a habeas corpus action involving custody of a child):

"It will be noted, of course, that the trial court has continuing jurisdiction, and if a sufficient change in conditions in the future shall occur as to warrant a modification of the decree, it is within the power of the court to provide therefor."

Similar expressions are found in Black v. May, 152 Okl. 160, 4 P.2d 17; Alford v. Thomas, Okl., 316 P.2d 188.

Secondly. The majority opinion makes no effort to weigh the evidence presented by Mr. and Mrs. Neely to support their claim that Mr. Davis was guilty of gross neglect of his children as this Court must do on appeal when the issue is raised. The finding of the trial court is, in my view, clearly against the weight of the evidence. The father did not neglect the children. He was prevented from ever seeing or knowing them. After her divorce from Mr. Davis in 1950, Mrs. Neely took them from California to Oklahoma. Mr. Davis corresponded with the children by letters and gifts until 1954 when he came to Oklahoma for the purpose of visiting them under the authority of the divorce decree granting his reasonable visitation privileges. Mr. and Mrs. Neely prevented him from seeing the children. In 1955, he commenced a habeas corpus proceeding to compel Mr. and Mrs. Neely to allow him to visit them. The application was denied. Thereafter letters and gifts sent to them were refused by reason of Mrs. Neely's objections to his further contact. Her attitude is revealed in the following excerpt from her testimony on cross-examination:

"Q. Mrs. Neely, you would have to agree, would you not, that the failure of the natural father to see the children was due to your fixed objection; isn't that true?

"A. I thought it was due to the writ of habeas corpus. I thought he wasn't supposed to see them.

"Q. Mrs. Neely, who made it necessary to apply for a writ of habeas corpus?

"A. I felt that it would hurt the children, and I was certainly for it.

"Q. Then it has been your objection, hasn't it?

"A. Oh, yes; and still is."

Going on to another point, the majority opinion says: "We therefore hold that where an adoption court determines that consent of a natural parent is not necessary in an adoption proceeding, such parent may yet participate in the adoption proceedings." Despite such holding, the majority opinion finds no error was committed by the trial court in denying Mr. Davis the right to so participate, because he made no offer of proof. The case of Taylor v. Davis, 199 Okl. 260, 185 P.2d 444, cited by the majority opinion is authority only for the rule that a party who is properly allowed to participate in a trial cannot preserve for review an objection to the exclusion of evidence, unless a proper question is asked, and, on objection thereto, a proper offer of proof is made. Such a rule cannot be stretched to fit the situation which the instant case discloses. The record shows that Mr. Davis was not advised that the hearing on the merits of the adoption would be had on the date it was held. Also the natural father should not be required to anticipate the evidence which would be presented by the Neelys and then make an offer of proof concerning what information he would elicit from their witnesses on cross-examination and what evidence he would present by his witnesses to rebut the testimony of their witnesses. Merely stating such a requirement is sufficient to show its impracticality and infeasibility.

At the conclusion of the hearing on the application for order determining the children eligible for adoption without consent of the natural father the following colloquy took place between counsel for Mr. Davis and the trial judge:

"THE COURT: The evidence on both sides having been concluded, the decision in said cause hereby being taken under advisement until May 27th at 10:00 o'clock a. m.; suggested findings of fact and conclusions of law to be presented as I have stated, and the Court will render its decision based upon findings of fact and conclusions of law as requested by counsel.

"MR. LUTTRELL: At that time, Your Honor, the decision rendered will

be as to whether or not the children are eligible for adoption without the consent of Mr. Davis; is that correct?

"THE COURT: That is all we have before the Court at this time.

"MR. LUTTRELL: I didn't want to face the proposition of going into a hearing on the merits of the adoption at that point without knowing about it."

Thereafter on the 27th day of May, 1960, the following occurred:

"MR. LUTTRELL: If the Court please, if the court should go ahead right now on the petition for adoption it would become entirely an ex parte proceeding. The court would necessarily hold that the father has no right to be heard or to take part in such proceeding. We specifically had an understanding when we left this courtroom before that the only thing we were coming back here for on May 27th was the question of eligibility of these children for adoption, and the transcript of testimony will so show, and if the court takes the view that we just don't have any more rights at all, that's one thing; but if the court thinks we have any rights, they would be violated by proceeding further at this time. * * *"

"THE COURT: * * * My feeling at this time is that the petition for adoption itself is part of the whole proceeding and should be disposed of at this time and that the entire matter should be appealed from at the same time; and I'm going to proceed with that, and I hope that the Supreme Court will help us in the future in determining what to do in this type of case. * * *"

"MISS OTTER: If the Court please, we are ready to put on testimony if you desire. We have the Petitioners here on the question of adoption; however, as I have mentioned before, it is our feeling that the very

testimony that would be applicable here is already of record. I would be happy to put Mr. and Mrs. Neely on if you would like for me to do so.

"MR. LUTTRELL: Your Honor, may I ask for the record, is it now the ruling of the Court that the Respondent father has no further right to be heard at this time?

"THE COURT: Yes.

"MR. LUTTRELL: Very well, sir, may we have an exception?

"THE COURT: Yes, show the exception."

Thereafter some evidence as to adoption was presented to the trial court and the following took place:

"THE COURT: * * * It will be the order of the court that the final decree of adoption at this time will be entered, declaring that said children named herein shall from this day forward be known as Paul Neely and Gaylord Neely, lawfully adopted children of Ralph Neely. Are you going to make any record in regard to this?

"MR. LUTTRELL: As soon as the court is through, I would like to be heard.

"THE COURT: All right, go ahead.

"MR. LUTTRELL: I would like if the the court please, to state that Mr. Rice and I feel that we should also file a motion for new trial as to this last order, and we do not have it ready because we did not anticipate this step being taken this morning. * * *"

I am of the firm belief that the Law should be as a mantle about a man's shoulders to give protection for the most precious and personal rights he can possess: being a father of his own children and having them bear his name. The Court should not put itself into the position of giving lip-service to such a great principle by saying he has the right to participate in the

trial of such a matter, then in the next breath destroy its effectiveness by denying his right to participate and at the same time require him to make an offer of proof when he had been given no warning or notice that there would even be such a hearing, let alone that he should make an offer of proof as to the many intangible and at that time unknown to him elements of testimony that could and should be presented upon a hearing of this nature.

In my judgment the majority opinion distorts both the facts and the law.

I dissent.