584 P.2d 209 (1978)
In the Matter of the ADOPTION OF E. S. P. and C. L. P.
GLEN EDWARD V. and Cynthia J. V., Respondents,
v.
EDWARD P., Jr., Petitioner.
No. 51191.
Supreme Court of Oklahoma.
June 27, 1978.
Rehearing Denied September 29, 1978.
Lackey & Wendel, Eufaula, for respondents.
Gotcher, Gotcher & Gotcher, McAlester, for petitioner.
BERRY, Justice:
Husband and wife petitioned to adopt wife's children by her previous marriage to children's natural father. As part of the adoption proceedings, husband and wife asked trial court to declare the children eligible for adoption without consent of the *210 natural father. Their reason was that natural father had willfully failed to support the children for 12 months next preceding filing of petition for adoption. 10 O.S. Supp. 1974 § 60.6.
On hearing to determine whether natural father's consent would be required husband and wife prevailed. The natural father moved trial court to certify the order for interlocutory appeal [12 O.S. 1971 Ch. 15, App. 2, Rule 1.50]. After this order was certified, natural father filed his petition for writ of certiorari in this Court [12 O.S. 1971 Ch. 15, App. 2, Rule 1.52] on time [Ibid., Rule 1.51] and in due time we granted certiorari. We granted certiorari to review trial court order on authority of our opinion in Davis v. Neely, Okl., 387 P.2d 494.
In that case we determined orders declaring children eligible for adoption without consent of natural parents were interlocutory orders. Since that case was decided we have extensively revised the rules of procedure in this Court.
Under our present rules orders declaring children eligible for adoption without consent of natural parents are final orders and appealable as such by the aggrieved parent. 12 O.S. 1971 Ch. 15, App. 2, Rules 1.10(a) and 1.11(b). Hereafter, parents aggrieved by such an order should proceed in this Court by direct appeals. Davis v. Neely, supra, to the extent it is inconsistent with the views expressed herein, in, is overruled.
Natural father raises two propositions on appeal. However, we find it necessary to consider only the question whether trial court erred in finding natural father's failure to support for one year prior to commencement of action to adopt was willful.
Evidence is unquestioned that natural father did not provide support for one year prior to commencement of adoption action. On the matter of willfulness evidence is in sharp conflict. The natural father's evidence tends to show he was willing to support, and attempted to contact the mother, but did not know precisely where the mother and children were living. The father claimed he did not actually send support money because he understood the money would be refused.
Adoptive parents' evidence tends to show the mother was willing to receive support money, but natural father sent none. Mother testified the father could always reach her through letters to her mother, even though her own address was kept secret from natural father.
We have said:
"Whether a parent has wilfully failed, refused or neglected to contribute support to a child to such extent as to obviate the necessity of obtaining his consent to her adoption is a question of fact for the trial court, and that court's decision will not be disturbed on appeal unless it is clearly against the weight of the evidence." DeGolyer v. Chesney, Okl., 527 P.2d 844.
Petitioner cites In re Gregory, Okl., 495 P.2d 1275, in support of his position. In the Gregory case, offers of support were refused by the natural mother. Failure of father to support was then cited as grounds for adoption by stepfather without consent.
In this case the natural father offered to pay for the funeral of his third child, who died prior to the divorce. He then failed in his promise. During the entire course of the next few years the record discloses not one offer or attempt to furnish child support. Natural father would, from time to time at irregular intervals, call the mother's parents and ask if child support could be sent. His testimony is that he was told not to send any support money. However, the record discloses on the only occasion support money was sent it was used for the children's benefit. This occurred in December 1975, more than one year prior to commencement of this proceeding.
We hold an inquiry concerning support does not amount to an offer of support. Where a parent makes a genuine offer of support, its refusal cannot later become the basis for an adjudication of failure to support. However, it is not enough to pose a *211 question about the likelihood of support being accepted. Support must be offered, and the offer rejected, to avail the party of the protection set out in Gregory, supra.
Even though the record does show mother was not free from fault in creating a condition which encouraged father's failure to support, we cannot say trial court's judgment is against the clear weight of the evidence in finding the father willfully failed to support the children.
We have carefully examined the record and the trial court's decision is not against the weight of the evidence. We note the credibility of witnesses, and the weight to be given to testimony which is in conflict, are questions of fact within the sole province of the trial judge. Central Plastics Co. v. Goodson, Okl., 537 P.2d 330; Snodgrass v. State of Oklahoma ex rel. Department of Public Safety, Okl., 551 P.2d 259.
Order of the trial court that the minor children are eligible for adoption without consent of the natural father is affirmed.
LAVENDER, V.C.J., and IRWIN, BARNES and DOOLIN, JJ., concur.
HODGES, C.J., and DAVISON, WILLIAMS and SIMMS, JJ., dissent.
SIMMS, Justice, dissenting.
The question presented for our determination is this: under the facts of this case did Edward P. willfully fail to support his children for one year preceding March 21, 1977, the date this action was filed? The answer is no, and I therefore dissent.
The majority's observation that Cynthia, Edward's former wife, was "not free from fault in creating a condition which encouraged [his] failure to support" is an understatement.
She kept the whereabouts of the children and herself secret from Edward for years. She admits this, but now asserts that Edward should have been sending support payments to her through her parents nevertheless. Edward's uncontradicted testimony was that he thought of that himself and tried, but her parents consistently advised him that his support would not be accepted; advising him that they would return any money he sent because Cynthia did not want anything from him.
The majority not only agrees with Cynthia, but holds that Edward did not do enough in attempting to support his children through their maternal grandparents, because he only inquired about the acceptability of support without actually tendering it. Edward is thereby precluded, rules the majority, from relying upon the protective rule of law we set forth in In re Gregory, Okl., 495 P.2d 1275 (1972) that where the actions of mother and her current husband induce the natural father to forego making support payments, that failure may not be utilized to deprive him of his child. There the mother had refused the father's offers of support and led him to believe that his support was not needed or desired and would not be accepted. This was not, we held, a "willful failure" to support within the intention of the statute.
The majority's attempt to distinguish away the application of Gregory to this case because here Edward merely inquired, whereas in Gregory the father actually offered, is a red herring. Of course Edward couldn't tender support to Cynthia. He couldn't find her. That's the point. This is an even stronger case for preserving paternal rights than was Gregory. There the actions of the mother and her husband merely induced the father into foregoing future payments. Here, the mother and new husband, by their actions, prevented Edward from having even an opportunity to offer to pay.
The majority cites no authority in support of its imposition of this legal burden upon a parent to pay child support to some third party while the other parent is hiding out with the children. I am aware of no authority and the majority does not explain how far this duty extends. If Cynthia's parents had been deceased, to whom should Edward have offered child support?
*212 The legal distinction between a mere inquiry about support and a tender is indeed a legitimate factor in passing upon the conduct between parent and parent. It has no application in these circumstances, however.
Cynthia left Edward in January, 1973; she took the children and left no forwarding address. Edward's sister later found out she was in McAlester and Edward went there to try and effect a reconciliation. Cynthia emphatically rejected his offer and told him to leave. The next time the parties saw each other, which was also the last time they met prior to this trial was at their child's funeral on September of 1973. The majority states that Edward "failed in his promise" to pay for that funeral. Even the trial court, although ultimately holding against Edward, didn't find he "failed" to pay those expenses. In his written decision, the trial court stated:
"[Edward's] only contact with his former wife was at... [the] funeral in 1973 ... and [her] response was that she didn't need any help paying for the funeral which was [his] inquiry."
Cynthia notified Edward of the child's death and funeral arrangements through his mother. That is also how he received notice of this action to declare his children eligible for adoption. Cynthia testified in regard to notice for this action that:
"I knew where his mother lived and I told [the attorney] if I would just send it to his mother she would be sure that he got it."
Shortly after the funeral however, Cynthia filed a divorce action against Edward, obtaining service by publication and giving no known address at which Edward could receive notice. The divorce was granted November 15, 1973. Edward had no knowledge of the divorce until he received notice of this action. Upon learning of the divorce and the county where it was obtained, Edward filed in that action a motion to modify to establish child support and visitation rights. That motion was pending at the time this action was heard.
Edward and his mother testified that Cynthia advised him at the funeral that anything he sent to the children would be given to Good Will.
Both Edward and his mother testified that the only time Cynthia's parents granted their requests to send presents to the children was the Christmas of 1975. Through them Edward sent the children presents and $100.00, which the grandmother used to buy them clothing.
Edward subsequently learned, in a letter from Cynthia's mother to his mother, that Cynthia had removed his name from the presents. Prior and subsequent to that Christmas, Cynthia's parents refused all requests by Edward and his mother to send presents. At all times Cynthia's parents advised him not to send money for the children's support and that any money he sent would be returned. Their testimony is uncontradicted.
The majority allows Cynthia to declare, after the fact, that her parents were her "agents" but does not hold her bound by their actions.
These facts do not constitute a "willful" failure to contribute to support within the intention of 10 O.S.Supp. 1974 § 60.
Additionally, I do not agree with the majority that a weight of the evidence test is sufficient in actions such as this. The effect of an order authorizing the adoption of a child without the consent of his or her natural parent is the same as a judgment terminating parental rights. Wade v. Brown, Okl., 516 P.2d 526 (1973). When the fundamental right of a parent to his or her child is at issue, a weight of the evidence test is not sufficient. The standard or quantum of proof required to support permanent deprivation of that right must be at least clear and convincing proof. See, dissenting opinion, Matter of Adoption of Michelle N., Okl. 577 P.2d 68 (1978), and cases cited therein. See, also, e.g., In re Sweet, Okl., 317 P.2d 231 (1957); In re Sego, 82 Wash.2d 736, 513 P.2d 831; In re J.Z., N.D., 190 N.W.2d 27 (1971); In re Willis, W. Va., 207 S.E.2d 129 (1974); Sims v. State Dept. of Public Welfare, 438 F. Supp. 1179 (S.D. Texas 1977).
*213 I would reverse the judgment of the trial court.
I am authorized to state that HODGES, C.J., and WILLIAMS, J., join with me in this dissent.
DAVISON, J., dissents to the majority opinion.