**Linda ROUNDTREE, formerly Linda Bates, Appellant,**

v.

**Aaron BATES, Appellee.**

**No. 54796.**

Supreme Court of Oklahoma.

June 30, 1981.

J. Douglas Williams, Woodward, for appellant.

Annis, Mitchel & Gaston by John Reichenberger, Woodward, for appellee.

OPALA, Justice:

The issues for decision are: [1] Is this state required by the principles of comity to give obedience to a custody modification order of a foreign divorce court which was rendered during a time when Oklahoma was the "forum state" within the meaning of the Uniform Child Custody Jurisdiction Act?[1] [2] May the in-state custodial mother's plea for child support increase be a litigable issue in a district court habeas corpus custody proceeding brought by a nonresident father who sought the enforcement of a foreign change-of-custody order?

We hold that (1) the trial court erred in giving absolute obedience—without either inquiry into, or an independent determination of, facts thought to warrant or militate against a custodial change—to the out-of-state change-of-custody modification order and (2) in a habeas corpus proceeding, in which the nonresident father is amenable to the court's jurisdiction, a claim may be asserted against him for adjudication of his financial responsibility for child support.

The object of habeas corpus proceeding, brought by the nonresident father, was to enforce a foreign change-of-custody modification order. The appeal presents the divorced parents' competing claims to their two minor children. The contestants' marriage was dissolved by a 1976 Kansas decree by which custody of the children was given to the mother who then moved with them to Oklahoma. She had lived here some three years when in 1980 the father obtained the Kansas divorce court's modification order granting him custody. His domicile at that time was in Colorado.

Before the Kansas court modified its decree as to custody, the mother had sought in vain to secure an order increasing child support payments in an independent suit lodged by her in Oklahoma. Actual notice of that suit had been served upon the father in Colorado. The trial court declined to entertain the mother's action because the father had neither been served in Oklahoma nor had entered an appearance in the case. The mother appealed to this court from the adverse decision.

Mother's appeal was pending when the Kansas modification order transferred custody to the father. In the habeas corpus proceeding, instituted by the father in the same Oklahoma court which had previously declined to entertain the mother's independent suit for support increase, the judge granted the writ in deferential recognition of the most recent custody order by the Kansas divorce forum and in obedience to that court's "continuing jurisdiction". When the mother lodged here an appeal from that decision, the trial court stayed the effect of the writ pending our review in both suits.

I.

THE COMMAND OF FULL–FAITH–AND–CREDIT CLAUSE AND THE DEFERENCE NOTIONS OF THE COMMON–LAW COMITY DOCTRINE VIEWED IN INTERACTION WITH THE PROVISIONS OF THE UNIFORM CHILD CUSTODY JURISDICTION ACT

The mother contends that the Uniform Child Custody Jurisdiction Act [UCCJA] op-

1. 10 O.S.Supp.1980 § 1601 et seq.

erated to divest the Kansas divorce court of jurisdiction to modify the decree awarding her custody of the children. This is so because the parties-litigant no longer had the statutorily requisite contact or connection with that state. She urges that Oklahoma should not, in this case, follow either comity or the continuing jurisdiction doctrine inasmuch as both of these notions are in conflict with the clearly expressed terms of the UCCJA. The father counters that the Kansas court retained continuing jurisdiction to modify the custody provisions of its divorce decree and this power was not defeated by the children's removal to another state. He urges that the trial court correctly followed the law's traditional approach which is said to compel deference to the judgment of the divorce-rendering forum.

■ The federal constitution requires that full faith and credit be accorded a final judgment of a sister state court having jurisdiction of the parties and of the issues that were decided.[2] The United States Supreme Court has never extended the command of the Full Faith and Credit Clause to child custody orders.[3] This class of adjudications is regarded as lacking the necessary attributes of finality because it comprises decisions which are subject to modification in the forum state.[4] Although full faith and credit does not mandate recognition of a foreign custody order, many states do adhere to the view that extraterritorial effect should be afforded to that class of judicial acts as a matter of deference grounded on the mixed notions of common-law comity and full faith and credit.[5]

■ Oklahoma gives effect to a sister state's custody award on the common-law principles of comity.[6] Absent some unusual circumstances which would jeopardize the welfare of a child, recognition is extended to the continuing jurisdiction of a valid sister state's custody order which meets the due process standards of notice and opportunity to be heard.

The doctrine of "continuing jurisdiction" —which holds that in the divorce-rendering court resides the exclusive power subsequently to modify the decree's child custody and support provisions—is of ancient origin. It has never been entirely free of exceptions. These were carved out with a view to accommodating problems created by an ever increasing *interstate* mobility of our migratory population.[7] More recently, we sanctioned some flexibility to govern *intrastate* matrimonial litigation as well. A divorce decree rendered in one county of this state may now be modified, in certain instances, by the district court in another county—both as to custody and support.[8] The precise question we must decide here is whether the UCCJA provisions which govern this case command us to depart in *interstate* custody contents from the traditional deference accorded by our courts to the continuing jurisdiction of the divorce-rendering tribunal of a sister state. Our inquiry does not challenge the authority of the Kansas courts to modify custody provi-

2. Art. 4 § 1, U.S.Const., *May v. Anderson*, 345 U.S 528, 73 S.Ct. 840, 97 L.Ed. 1221 [1953]; *Greenhouse v. Hargrave*, Okl., 509 P.2d 1360, 1362 [1973]; *Wells v. Sheriff, Carter County*, Okl.Cr., 442 P.2d 535, 540 [1968]; *Crooks v. District Court of Seventh Judicial Dist.*, Oklahoma County, Okl., 581 P.2d 897, 899 [1978]; *Hedrick v. Hedrick*, Okl., 571 P.2d 1217, 1219 [1977]; *Ross v. Ross*, 201 Okl. 174, 203 P.2d 702, 705 [1949].

3. See discussion in *Hedrick v. Hedrick*, supra note 2; *Borys v. Borys*, 76 N.J. 103, 386 A.2d 366, 369–372 [1978]; Anno. 35 A.L.R.3rd 520; 9 ULA 111, 112–113, Uniform Child Custody Jurisdiction Act, Prefatory Note.

4. *Hedrick v. Hedrick*, supra note 2; *Greenhouse v. Hargrave*, supra note 2; *Nehra v. Uhlar*, 168 N.J.Super. 187, 402 A.2d 264 [1979]; *Borys v. Borys*, supra note 3, 386 A.2d at 370.

5. Anno. 35 A.L.R.3rd 520.

6. *Duncan v. Seay*, Okl., 553 P.2d 492 [1976]; *Wilkerson v. Davila*, Okl., 351 P.2d 311 [1960]; *Bush v. Bush*, Okl., 299 P.2d 155 [1956]; *Clampitt v. Johnson*, Okl., 359 P.2d 588 [1961]; *Chapman v. Walker*, 144 Okl. 83, 289 P. 740 [1930].

7. *Ross v. Ross*, supra note 2.

8. *Cooper v. Cooper*, Okl., 616 P.2d 1154, 1156 [1980].

sions of their divorce decrees.[9] Rather, the issue before us is one narrowly limited to a determination whether the common-law doctrine of deference by comity must yield when, as here, it is in direct conflict with the applicable provisions of the UCCJA.

The UCCJA requires the courts of a state which adopts it to "recognize and enforce" custody orders of another state and to decline their modification unless the other state is no longer invested with jurisdiction. The Act declares that full effect must be given a valid out-of-state decree if the due process requirements of notice and opportunity to be heard have been met [10] and the rendering court had assumed judicial cognizance under standards substantially in accord with UCCJA.[11] Oklahoma courts are

directed to defer to the continuing jurisdiction of a sister state only so long as that state retains cognizance under the UCCJA standards.[12] When under those standards the state in which the original custody order was issued no longer has jurisdiction, the UCCJA confers cognizance on the child's "home state".[13] The latter state is defined as the state in which the child lived for the preceding six months.[14] The UCCJA unequivocally mandates a departure from the notion that continuing jurisdiction does reside in the foreign divorce-rendering state when the forum for cognizance of custody modification has in fact shifted to Oklahoma *qua* "home state".[15]

 In the instant case, Kansas would not qualify as the "home state". The moth-

9. Kansas adopted the UCCJA in 1979. KSA 1979 Supp. 38–1301 et seq. Jurisdiction conferred by the Kansas divorce statute (KSA 60–1610(a)—which provides that the district court has continuing jurisdiction over custody matters even when a custodial parent has moved to another state—must now be construed in conjunction with the UCCJA (§ 38–1303) which sets the jurisdictional standards for both an initial custody proceeding and for subsequent modification orders. *Larsen v. Larsen*, 615 P.2d 806 [Kan.App.1980].

The UCCJA is not a reciprocal law. Each state can put it into full operation without any regard for its enactment by another state. 9 ULA 111, 114, Uniform Child Custody Jurisdiction Act; *Barcus v. Barcus*, 278 N.W.2d 646, 649 [Iowa 1979].

10. The terms of 10 O.S.Supp.1980 § 1606 provide: "Before making a decree under this act, *reasonable notice and opportunity to be heard* shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of the child. If any of these persons is outside this state, notice and opportunity to be heard shall be given pursuant to Section 7 of this act." (emphasis added).

11. By the terms of 10 O.S.Supp.1980 § 1615 it is provided: "The courts of this state *shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this act* or which was made under factual circumstances meeting the jurisdictional standards of the act, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this act." (emphasis added).

12. 10 O.S.Supp.1980 § 1615, supra note 11.

13. 10 O.S.Supp.1980 § 1605(A)(1)(a), (b).

14. 10 O.S.Supp.1980 § 1604(5).

15. *Howard v. Gish*, 36 Md.App. 446, 373 A.2d 1280, 1282–1283 [1977]; *Brooks v. Brooks*, 20 Or.App. 43, 530 P.2d 547, 551–552 [Or.App. 1975].

Four jurisdictional standards set the stage for the selection of the forum state for modification of a custody decree. These standards also apply to an initial proceeding under the UCCJA. In most instances the proper forum is the "home state," where the child lived for the preceding six consecutive months. 10 O.S. Supp.1980 §§ 1604(5), 1605(A)(1)(a), (b). A second alternative applies when it is "in the best interest of the child" for a forum to take jurisdiction. There must be a "significant connection" under the second alternative because of the presence of at least one parent and the child within the forum. There must also be substantial evidence available in that forum concerning the child's care, protection, training and personal relationships. It is not necessary for the child to be physically present within the state. 10 O.S.Supp.1980 § 1605(A)(2)(a), (b), (C). The third jurisdictional basis is afforded by an emergency situation where the child is physically present within the state and has been abandoned, mistreated, abused, neglected or threatened. 10 O.S.Supp.1980 § 1605(A)(3)(a), (b). Lastly, jurisdiction may be exercised if no other state could or would assume jurisdiction. 10 O.S.Supp.1980 § 1605(A)(4)(a).

er and the children had not lived there for at least three years when the father invoked the divorce court's power for modification. The father was at that time domiciled in Colorado. There appear to be neither "significant connection" with the Kansas forum nor is there a showing of "substantial evidence" being available there with respect to the children's care, protection and training. The record is also barren of a jurisdictional basis for custody modification in Kansas under the emergency provisions of the UCCJA. Moreover, this is not a case where no other state would be willing to assume jurisdiction.

We can find no basis in the UCCJA for giving binding recognition to the Kansas custody order under the doctrine of continuing jurisdiction in that forum. While at the time of the Kansas custody modification that state did not meet the jurisdictional standards of the UCCJA, Oklahoma was, during this very period, the home state of the children.

One of the stated goals of the UCCJA is to move the situs of child custody litigation to "the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available." [16] That state is deemed to be in a better position adequately to inform itself of the needs of the child and to determine if a child's best interest will be served by a change in the prior out-of-state custody order.[17]

The trial court erred in extending deferential recognition and giving obedience to the Kansas decree. Its clear duty under the UCCJA was to inquire into, and independently determine, the merits of the father's claim for change of custody from the mother to himself.

## II.

## ADJUDICATION OF CHILD SUPPORT IN A HABEAS CORPUS CUSTODY PROCEEDING

■ Both in habeas corpus proceeding and in the suit to increase child support the mother contends that the trial court had jurisdiction to alter the prior support provisions of the Kansas divorce decree.

In a habeas corpus custody proceeding, in which the father is amenable to the court's jurisdiction, the trial court is empowered to adjudicate his financial responsibility for child support.[18]

We need not decide here whether service of actual notice upon the father in Colorado made him amenable to the Oklahoma court's jurisdiction in the earlier independent suit for child-support increase. This is so because in the subsequent habeas corpus proceeding, which he himself brought in this state, a forum was clearly available for the adjudication of his responsibility for the children's support needs.

The orders under review are reversed. The consolidated causes are remanded with direction to adjudicate the habeas corpus issues in a manner consistent with the views expressed in this opinion. The trial court is also directed to inform the Kansas court of all the proceedings thus far conducted, and of those which will be held, in Oklahoma.[19]

IRWIN, C. J., BARNES, V. C. J., and HODGES, LAVENDER, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

---

**16.** 10 O.S.Supp.1980 § 1602(3).

**17.** The terms of 10 O.S.Supp.1980 § 1605(D) provide in pertinent part: "The controlling criteria for awarding custody by a court of this state shall always be what is in the best interest of the child..." This provision goes to the question of who should have custody of the children. The "best interest of the child" is the criteria both under the UCCJA (once jurisdiction has been assumed) and our decisional law awarding custody. *Holt v. District Court, Car-* ter County, Okl., 626 P.2d 1336, 1343 [1981]; *Boyle v. Boyle*, Okl., 615 P.2d 301, 303 [1980].

**18.** 12 O.S.1971 § 1354; *Landrum v. Landrum*, Okl., 629 P.2d 357 (1981). The *Landrum* decision overruled *Ex parte Kelly*, Okl., 261 P.2d 452 [1953]. See also *Ex parte Yahola*, 180 Okl. 637, 71 P.2d 968 [1937].

**19.** 10 O.S.Supp.1980 §§ 1608(C), 1609(D), 1618.