Laura Canupp PIERSON, Appellee and Counter–Appellant,

v.

Otis CANUPP, Appellant and Counter–Appellee.

No. 63027.

Supreme Court of Oklahoma.

May 3, 1988.

As Corrected May 6, 1988.

L. Wayne Woodyard, Pawhuska, for appellant and counter-appellee.

Robert A. Flynn, Tulsa, for appellee and counter-appellant.

OPALA, Justice.

Two questions are presented for our decision: [1] Is the father's quest for corrective relief from the trial court's "certified interlocutory order" dismissible for his failure to establish an aggrieved-party status and because the trial judge's certification is ineffective to invest this court with reviewing cognizance? and [2] Did the mother bring a timely appeal from the trial court's order that refused to assume jurisdiction in both the custody and the adoption contests? We answer the first question in the affirmative and dismiss the father's appeal; as for the second question, our answer is also in the affirmative *with respect to the adoption case disposition.* We hold that, while the mother's appeal was timely brought from that order, the trial court's decision was not clearly contrary to the law.

I

THE PROCEDURAL HISTORY OF
THE CASES

A. *The Arizona Antecedents of the Custody Contest*

The parties are the parents of two minor children. Divorced in Arizona in 1978, they were awarded joint custody. Four months after the divorce, custody was changed to the paternal grandparents. Following several more forensic battles, custody was eventually returned to the mother with visitation provisions made in favor of the father. The mother left Arizona in October or November of 1982 without the father's knowledge or consent. Shortly thereafter the Arizona court found the mother in contempt and issued a bench warrant for her arrest. Temporary custody of the children was then awarded to the father who was unable to learn of their whereabouts until March 1984.

B. *The Father's Writ of Habeas Corpus*

The father's quest for custody was by habeas corpus brought in the Oklahoma court. His claim was based on the Arizona bench warrant and temporary custody award. He sought to take the children back to Arizona where litigation over their custody could be continued. Although the writ was granted *April 3, 1984,* its enforcement was stayed for 30 days to allow the mother to go to Arizona with the children and to litigate her custody claim in that forum. In the event she failed to comply with the court's directive, custody of the children was to be given to the father. The mother's timely request for "reconsidera-

tion"[1] of this ruling was denied *July 11, 1984* and she was again directed to seek relief in Arizona.

### C. The Mother's Attempt to Gain Custody of the Children

The day of the habeas corpus hearing the mother filed a petition to have the trial court assume jurisdiction and determine her claim for custody. In its *April 3, 1984* order granting the writ the trial court refused to assume jurisdiction of the mother's quest for a custody contest. "Reconsideration" of this ruling also was denied *July 11, 1984.*

### D. The Mother's Petition for Adoption Without Consent of the Father

The mother next sought to have the children adopted by her present husband without the natural father's consent. The trial judge initially arrested further adoption proceedings until the Arizona court could determine the custody and jurisdictional contests. On *August 31, 1984* he rendered *judgment* for the father declaring that the trial court lacked jurisdiction to decide the children's eligibility for a consentless adoption.

### E. Consolidation of the Habeas Corpus, Custody Contest and Adoption Cases in the District Court and Certification of Common Issues for Interlocutory Review

*Lastly,* the mother sought to have the three separate proceedings treated as companion cases and to have issues common to all three "certified" for immediate review. The district court acceded to this request and on *August 31, 1984* certified the cases under a stay of the habeas corpus order for an additional 30–day period. At the end of this limit, custody of the children was to be returned to the father if the mother did not take them to Arizona or obtain a longer stay order from the Oklahoma Supreme Court.

### F. Nunc pro tunc clarification and correction of the April 3, 1984 and July 11, 1984 orders and the August 31, 1984 judgment

Because the record of the trial court proceedings was in dispute and fraught with ambiguities,[2] we authorized the moth-

1. The so-called "motion to reconsider" is a stranger to the statutory nomenclature in Oklahoma *nisi prius* practice and procedure. If timely filed, a motion to reconsider may be regarded as one for new trial under 12 O.S.1981 § 651 and hence as effective to extend appeal time for review of a final order or judgment. *Horizons, Inc. v. KEO Leasing Co.*, Okl., 681 P.2d 757, 758–759 [1984]. It may also be treated as one to modify or to vacate a final order or judgment under the terms of 12 O.S.1981 §§ 1031 and 1031.1. If the motion falls into the latter class, it will not extend the time to seek review of the final order or judgment to which it is directed. *Salyer v. National Trailer Convoy, Inc.*, Okl., 727 P.2d 1361, 1362 [1986].

2. The parties filed in this court on October 9, 1984 "Agreed Stipulations," which state in pertinent part:

"4. The parties disagree over whether the [district] court issued the Writ of Habeas Corpus or only stayed its execution.

a. Appellee contends that the Writ was never granted but merely was stayed from hearing to hearing.

b. Appellant contends that the Writ was granted by order of the April 3, 1984 hearing as a result of Appellee's failure to return to Arizona. Appellant further argues that orders of July 11, 1984 and August 31, 1984, while poor draftsmanship, were intended merely to stay the enforcement of the Writ, not the granting of same. Further, that the transcript of the hearing of August 31, 1984 clearly shows that the Writ had been granted, to-wit: (p. 15, line 12)

Mr. Woodyard ... If the writ is granted they have no right to stay unless they can go to the Supreme Court and say you cannot enforce this Writ until the appeal is taken unless this Court is saying that the Writ previously granted is not going to be enforced for thirty (30) days.

The Court ... That's right."

During the November 6, 1984 hearing on the nunc pro tunc correction father's counsel stated:

" * * * First of all and I'm a part of this, the confusion in this case is really unacceptable for lawyers. I am unfortunately a part of this matter and I am really not very proud of the record as it's gone up before the Supreme Court.... It's my view in answer to each of these questions that the Court is deciding right now what the Court intended by each of these answers. I would respectfully submit and would ask the Court to just read the questions and to answer them as the Court intended they be reflected in the written

er to seek clarification by correction nunc pro tunc in a proceeding ordered to be conducted by the trial judge as this court's special master. The trial judge's authority to act was limited to matters contained in our October 24, 1984 order.[3] We sought to have him determine whether the writ had in fact been granted on April 3, 1984 and later withdrawn by the July 11, 1984 order. After a hearing, the trial court clarified the record by finding that its April 3, 1984 writ had not been modified by the later July 11, 1984 ruling.

*There is nothing on this record to indicate* error in the trial judge's nunc pro tunc findings. *No contention* is advanced by either party that the correction order is contrary to the proof adduced at the special master's hearing. The findings are clearly supported by the "record entry" of the writ's issuance, and the special master's ruling that the writ had not been withdrawn also stands uncontradicted either by the record or by testimony. In short, the record viewed in its entirety leaves us free from doubt that the writ had been issued on April 3, 1984 and remained undisturbed by the trial court's July 11, 1984 order.

While legal soundness of a trial judge's mid-appeal nunc pro tunc record correction ordered by this court is open to challenge

either on motion or by an amended petition-in-error,[4] neither party here has sought corrective relief from the special master's findings. *There is hence no contest about its validity or correctness.*

## II

### THE STATUS OF THE FATHER'S APPEAL

The father opposed the August 31, 1984 certification order as well as the trial judge's stay in habeas corpus. He now argues that the order was wrongly issued. Even if that order had been correctly rendered the father would lack an appealable interest because, as shown below, he is not aggrieved by any of the judicial actions he tenders for our review.

■ A proceeding to review a certified interlocutory order must comply with the terms of 12 O.S.1981 § 952(b)(3)[5] and Rules 1.50–1.56.[6] The provisions of § 952(b)(3) plainly require that an interlocutory order to be certified for our review *affect a substantial part of the merits of the controversy.*[7] Our power to review certified orders clearly is confined to those which deal with *prejudgment issues on the merits* of a controversy. Certification and

---

record the fault of which lies with myself and counsel." [Transcript at pgs. 4 and 5].

3. The questions posed by this court in its October 24, 1984 order and the answers submitted by the trial judge on November 6, 1984 are:
   "1. Was a writ of habeas corpus in fact granted on April 3, 1984, as recited in the written memorial of April 13, 1984? Answer: *Yes.*
   2. Did the trial court rule on April 3, 1984, as recited in the April 13, 1984 written memorial, that it did not have jurisdiction over the children? Answer: *Yes.*
   3. Did the trial court modify in its July 11, 1984 order overruling motions to reconsider the prior April 3, 1984 ruling with respect to the habeas corpus relief and, if so, in what particulars? Answer: *No.*
   4. Did the trial court, in its July 11, 1984 order overruling motions to reconsider, modify its April 3, 1984 ruling that it did not have jurisdiction over the children? Answer: *No.*
   5. Was the petition for adoption without consent of the father dismissed for lack of jurisdiction on August 31, 1984? Answer: *Yes.*"

4. See *Armstrong v. Trustees of Hamilton Inv. Trust,* Okl., 667 P.2d 985, 987 [1983] and *McCullough v. Safeway Stores, Inc.,* Okl., 626 P.2d 1332, 1334 [1981].

5. The terms of 12 O.S.1981 § 952(b)(3) provide in pertinent part:
   "(b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof:
   \* \* \* \* \* \*
   3. Any other order, which affects *a substantial part of the merits of the controversy* when the trial judge certifies that an immediate appeal may materially advance the ultimate termination of the litigation; \* \* \* \*"
   [Emphasis added.]

6. Rules 1.50–1.56, Rules on Perfecting a Civil Appeal, 12 O.S.1981, Ch. 15, App. 2.

7. *Community National Bank of Warr Acres v. Beasler,* Okl., 520 P.2d 813, 814 [1974]; *Young v. Oklahoma City,* Okl., 524 P.2d 22, 23 [1974]; *White v. Wensauer,* Okl., 702 P.2d 15, 16 [1985] and *Roark v. Shelter Mut. Ins. Co.,* Okl., 731 P.2d 389, 390 [1987] (Opala, J., concurring).

review of an interlocutory order is impermissible when, as here, a disposition on the merits had already been effected.[8]

Inasmuch as in this case the quest for assumption of jurisdiction in the custody modification contest and in habeas corpus had been *finally* resolved *prior to* the district court's *August 31, 1984* "certification order", nothing is tendered for our "interlocutory" review. Moreover, any matter decided by the July 11, 1984 order clearly stood *beyond the reach of our appellate cognizance* at the time of the August 31, 1984 certification. More than 30 days had then lapsed from the date of that order.

The 30–day interim suspension granted by the trial court's August 31, 1984 order was to enable the mother to obtain a stay from this court. Since no stay was afforded her here and the 30–day period of suspension had now expired, this issue is moot.

██ The father's challenge to the validity of the certification order is dismissible. He is not aggrieved by the trial court's August 31st attempt to certify the case.[9] Moreover, because the certification does not tender for our review any interlocutory disposition *on the merits* of the case,

it is ineffective to invest us with reviewing cognizance.[10]

## III

## THE STATUS OF THE MOTHER'S APPEAL

### A. *Timeliness of the Appeal*

Although the mother was the primary movant for securing below the certified interlocutory order, she appears here as a "counter-appellant" rather than as petitioner for certiorari under the provisions of 12 O.S.1981 § 952(b)(3).

██ The mother failed to appeal from the *July 11, 1984 terminal order* in the *habeas corpus* and *custody modification proceedings*. The error, if any was made in that decision, is beyond the reach of our reviewing cognizance. Errors are not correctible unless an appeal is timely brought from the terminal disposition. No postdecisional quest for relief—other than one made by a timely and authorized new-trial motion—will enlarge the time for appellate review of errors made in a final order of the trial court.[11] The 30–day time limit for

---

8. Issues *dehors* the merits—arising either before or after trial—are not certifiable for review of an interlocutory order. *Roark v. Shelter Mut. Ins. Co.*, (Opala, J., concurring), *supra* note 7 at 390; *Bilecki v. Service Collection Ass'n., Inc.*, Okl., 732 P.2d 452, 453 [1986] and *White v. Wensauer, supra* note 7 at 16. The word "merits" has a well-defined meaning in law. It signifies the *real or substantial grounds of action or of defense*. Practice, procedure and evidence are not embraced within the term. These are matters "*dehors* the merits". *Flick v. Crouch*, Okl., 434 P.2d 256, 261 [1967]; see also, *Young v. Oklahoma City, supra* note 7 at 23–24 and *Community National Bank of Warr Acres v. Beasler, supra* note 7 at 814.

9. Standing to prosecute an appeal must be predicated on that interest in the trial court's decision which is direct, immediate and substantial. One cannot appeal from a decision that does not affect one's substantial rights. *Underside v. Lathrop*, Okl., 645 P.2d 514, 517 [1982] and *Cleary Petroleum Corp. v. Harrison*, Okl., 621 P.2d 528, 530 [1980].

An appeal will be dismissed if it appears that only a moot question is involved or that a party has failed to establish aggrieved-party status. *State ex rel. Dorland v. County Election Board of Comanche County*, 180 Okl. 334,

69 P.2d 35 [1937]; *Revard v. Givens*, 139 Okl. 60, 281 P. 233 [1929] (syllabus) and *Weekly v. State*, 203 Okl. 576, 224 P.2d 593, 594 [1950].

10. The certification order is loosely drawn and falls short of minimum compliance with Rules 1.50–1.56, *supra* note 6, and 12 O.S.1981 § 952(b)(3), *supra* note 5. The order does not tender any specific issues, the resolution of which may materially advance the ultimate termination of the litigation. Rather, it merely finds that the "three cases [habeas corpus, custody and adoption] should be certified as companion cases for immediate appeal." The confused state of the order is borne out by language which certifies the adoption proceeding for immediate review and then, by the court's refusal to assume jurisdiction of that proceeding, renders a final disposition of the case.

11. *Salyer v. National Trailer Convoy, Inc., supra* note 1 at 1363; *Timmons v. Royal Globe Ins. Co.*, Okl., 713 P.2d 589, 591–592 [1986]; *Hawkins v. Hurst*, Okl., 467 P.2d 159, 163 [1970]; *Tolliver v. First Nat. Bank of Bluejacket*, 179 Okl. 191, 64 P.2d 1215, 1216 [1937]; *Missouri Quarries Co. v. Brady*, 95 Okl. 279, 219 P. 368, 369–370 [1923] and *Bellamy v. Washita Valley Telephone Co.*, 25 Okl. 792, 108 P. 389, 390–391 [1910].

lodging an appeal cannot be extended by a certified interlocutory order addressed to an appealable decision.[12]

In the *adoption* case final adjudication was rendered on *August 31, 1984.* Although the mother's "counter-appeal", *directed to that decision,* was timely brought, she cannot succeed here because we conclude that the trial court's refusal to assume jurisdiction in the proceeding for adoption was not clearly contrary to the law.

### B. *The Issues Raised in the Mother's Appeal*

The mother argues the trial court had assumed jurisdiction in the adoption and custody modification contests by ordering visitation on April 4, 1984 and by rendering a restraining order on June 28, 1984. She asserts that the trial court erred in later refusing to assume jurisdiction of those disputes. The mother also questions the test applied below in determining the forum competent to decide her custody claim. We are not persuaded by these arguments.

█ When declining to assume jurisdiction in the custody contest, the trial judge *explicitly* ruled that jurisdiction lay elsewhere. In the adoption case the court *impliedly* concluded it was unable to reach for decision the child's eligibility for a consentless adoption until litigation already begun and pending in another state (whose jurisdiction was being exercised) will have clarified the parties' custodial status. On this record, the trial court's order refusing to entertain the consentless adoption contest is clearly not contrary to the law.[13]

The father's quest for corrective relief by "appeal" is dismissed for failure to establish aggrieved-party status and because the certification order lacks legal efficacy to invest this court with reviewing cognizance; the mother's appeal is treated as timely *only* with respect to the adoption

case order, and the trial court's refusal to assume cognizance of that proceeding is affirmed.

HARGRAVE, V.C.J., and LAVENDER, SIMMS and KAUGER, JJ., concur.

DOOLIN, C.J., and SUMMERS, J., concur in part and dissent in part.

HODGES and ALMA WILSON, JJ., dissent.

ALMA WILSON, Justice, dissenting.

The order of July 11, 1984, was not a final order. The third finding of the July 11, 1984, order states:

> If plaintiff fails to file the proper pleadings in the Superior Court in and for Pima County, State of Arizona, within thirty (30) days of this order, then the Court *would consider, upon proper application,* the Writ of Habeaus Corpus previously filed by the defendant and heretofore stayed by this Court. [Emphasis added.]

The order states:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the Writ of Habeas Corpus previously filed in this matter by the defendant is stayed an additional thirty (30) days; it is further ordered that *in the event* the plaintiff fails to file the appropriate pleadings within said thirty (30) day period, then this Court *will consider upon proper application* and notice to the adverse party the Writ of Habeas Corpus. [Emphasis added.]

Because the trial court put the consideration of the writ in the future in both of the above quoted paragraphs, the writ cannot be said to have issued. Since it had not yet issued, the above order cannot be considered a final order pursuant to 12 O.S. 1981, § 953. The July 11, 1984, order

---

**12.** 12 O.S.1981 §§ 990 and 992 and Rule 1.15(a), Rules On Perfecting A Civil Appeal, 12 O.S.Supp. 1985, Ch. 15, App. 2. The pertinent terms of Rule 1.15(a) are:

"The petition in error shall be filed within thirty days from the final judgment or final order; ...

*The interval* allowed for filing a petition in error *may not be extended* by either the trial tribunal or this Court. * * * " [Emphasis added.]

**13.** *Roundtree v. Bates,* Okl., 630 P.2d 1299, 1301 [1981].

merely informs the parties that *if* a certain action is not taken, then the trial court will *consider* a writ of habeas corpus. "A judicial announcement of what judgment might be rendered under specified circumstances yet to occur—*per verba de futuro*—is not a judgment." *Lawrence v. Cleveland County Home Loan Auth.*, 626 P.2d 314, 316 (Okla.1981). "In cases tried without a jury the pronouncement by the court from the bench is its judgment if it is in a form which indicates a present intent to adjudicate the pending matter." *Miller v. Miller*, 664 P.2d 1032, 1034 (Okla.1983).

On October 24, 1984, this Court allowed the appellant to go back before the trial court with an "application for correction and clarification of record nunc pro tunc," but with this Court submitting the questions. The questions and answers, which were submitted on November 6, 1984, were as follows:

1. Was a writ of habeas corpus in fact granted on April 3, 1984, as recited in the written memorial of April 13, 1984? Answer: Yes.

2. Did the trial court rule on April 3, 1984, as recited in the April 13, 1984 written memorial, that it did not have jurisdiction over the children? Answer: Yes.

3. Did the trial court modify in its July 11, 1984 order overruling motions to reconsider the prior April 3, 1984 ruling with respect to the habeas corpus relief and, if so, in what particulars? Answer: No.

4. Did the trial court, in its July 11, 1984 order overruling motions to reconsider, modify its April 3, 1984 ruling that it did not have jurisdiction over the children? Answer: No.

5. Was the petition for adoption without consent of the father dismissed for lack of jurisdiction on August 31, 1984? Answer: Yes.

An order nunc pro tunc "may not be made to supply a judicial omission or an error of the court, or to show what the court might or should have decided, or intended to decide, as distinguished from what it actually did decide." *Stevens Expert Cleaners & Dyers v. Stevens*, 267 P.2d 998, 1001 (Okla.1954), quoting 30 Am. Jur. 876, "Judgments", § 109. "The function of a nunc pro tunc entry is to reconstruct and put on record the *true memorial* of what did in fact transpire in litigation." (Emphasis in original.) *McCullough v. Safeway Stores, Inc.* 626 P.2d 1332, 1334 (Okla.1981). The order clearly reveals that the writ of habeas corpus was to be considered in the future. In spite of the language in the "Order for Clarification and Correction of Record Nunc Pro Tunc," the April 13, 1984, written memorial states:

> The Court further orders that the Writ of Habeas Corpus herein be continued for thirty (30) days for review of plaintiff's compliance with this order. Further that in the event the plaintiff fails or refuses to return to the State of Arizona within thirty (30) days from this date, *then* the Writ of Habeas Corpus prayed for by the defendant is granted and custody of Heidi M. Canupp and Hans Dietrick Canupp are placed with the defendant, Otis Canupp. [Emphasis added.]

Both the April 3, 1984, order and the July 11, 1984, order clearly reveal that the writ of habeas corpus was left for future consideration, and because the writ never issued, no final order exists as to the habeas corpus.

I dissent from the majority view that this Court may confer authority on the trial court to review and impose, by a subsequent nunc pro tunc order, finality on its own order when a clear reading of such order defies such a construction. The trial court is without jurisdiction to construe its own order in this manner, and such a construction is therefore erroneous. I respectfully submit that because this Court has directed a post judgment inquiry and given a trial court the power of ultimate judicial review over the intent and finality of its own order, the bench and the bar need take note and govern itself by this *new* judicial fiat that overrules, at least by implication, *Lawrence*, and *Points v. Oklahoma Publishing Co.*, 672 P.2d 1146 (Okla.1983).